(No. 6622. March 3, 1939.)

BRADLEY H. McMICKLE, Appellant, v. ALDA B. Mc-MICKLE, Respondent.

[88 Pac. (2d) 530.]

Fisher & Coffin, for Appellant.

Richards & Haga, for Respondent.

BUDGE, J.—Appellant, Bradley H. McMickle, instituted this action for a divorce against Alda B. McMickle, respondent, on the single ground of desertion, seeking also the approval of an alleged property settlement and division of certain remaining property. No affirmative relief was asked by respondent. After the introduction of evidence the court made findings of fact and conclusions of law to the effect that respondent did not desert appellant and that no property settlement existed and entered judgment that appellant take nothing by his complaint and the same be dismissed

and respondent recover her costs and disbursements. From the judgment this appeal was taken.

What appellant terms "the central error in this case" is referred to in assignments 1, 2 and 5, and is to the effect that the court erred in finding that respondent did not desert appellant and in failing to find to the contrary. Paragraph IV of the amended complaint alleged:

"That in the latter part of May, 1931, the defendant did wilfully and without cause desert and abandon plaintiff and separate herself from him, disregarding the solemnity of her marriage vow, and ever since, and still continues to, so wilfully and without cause desert and abandon plaintiff, and to live separate and apart from him without any sufficient cause or reasons, and against his will and without his consent."

Respondent denied such allegations. The voluminous record herein discloses that the parties were married in 1898 and for many years thereafter devoted their main effort to conducting joint and individual business dealings, gathering together some 55 or 60 thousand dollars in property. About 1923 or 1924 relations between the parties became inharmonious and this marital friction and difficulty persisted for some years. Since April or May, 1931, the parties have lived separate and apart continuously. With specific reference to the desertion alleged in the complaint there appears to be a sharp conflict between the testimony of the husband and wife. Appellant in effect testified that in May, 1931, respondent left and went to Portland without his consent and against his wishes and without cause as far as he knew. He testified variously, that respondent stated she was never coming back, was leaving for good, and that "She didn't say whether she was coming back or not. She was going." Appellant also testified that within two or three days after respondent left for Portland he likewise left their home in Redmond, Oregon, going to Bend to stay with his sister, and that prior to his leaving for Bend he had written a letter or note to respondent and left it on a table in their home at Redmond, expecting respondent would return in a short time for clothing inasmuch as she had taken only a small bag

with her. Appellant's version of the contents of this letter, which has since been lost or destroyed, was as follows:

"I told her only owing to her mental condition and my physical condition and the way she was acting towards me, I didn't see any chance for us to get along. She would go away and leave me there whether I was sick or whether I wasn't, and I had put all my stuff in the billiard room and locked it up and taken her stuff out and was moving up to Bend to my sister's, and when she got back I would like to settle up on the home and I would give her all the best of it in the division of the property, and I would also do the same with the house; if she would give me $1250.00, I would consider I had no interest in the home."

On the other hand, respondent's testimony is to the effect that she did not leave appellant, but did go to Portland for a directors' meeting of the Oregon Imperial Corporation, of which she was president, with Mr. and Mrs. Kendall, being gone four days and returning May 29th with the Kendalls, and that upon her return she found appellant had gone and found the note left on the table. Respondent's version of the contents of the note is in sharp conflict with that stated by appellant, respondent testifying that it was to the effect that he was never coming back, "that he was leaving; that he didn't intend to live with me any more"; and "that if it wasn't for the property he wouldn't ever live in Redmond, but as long as he had business interests there he would have to come back and be in the community." The witness Clyde Williams fully corroborated respondent as to the contents of the note left by appellant. It appears that thereafter respondent took other business trips to Portland and other points returning from time to time to the home in Redmond and living there. Upon her return from a trip to Portland on or about July 23, 1931, respondent found appellant and a sister-in-law in the home at Redmond engaged in packing and moving certain articles, including table linen, blankets, dishes and the safe from the home of the parties.

In the light of the testimony only and disregarding other evidence, it seems clear and beyond question that whether respondent deserted appellant was an issue upon

which the evidence was not only sharply conflicting, but that the evidence tended to show that appellant deserted respondent. The burden of establishing desertion by a preponderance of the evidence was on the appellant and the court was not in error in finding that he failed so to do.

Appellant recognizes that the foregoing testimony permits of the conclusion that appellant left respondent and urges the theory of constructive desertion upon the following basis, recited in appellant's brief:

"The conduct of one of the spouses may be such that it would be deemed a constructive desertion of the other spouse from the matrimonial domicil, so that a divorce may be granted for desertion to the spouse who is driven out from the spouse who does not depart.

"IF THE MISCONDUCT OF ONE SPOUSE RENDERS THE CONTINUANCE OF THE MARRIAGE RELATION SO UNBEARABLE THAT THE OTHER LEAVES, THE FORMER AND NOT THE LATTER IS THE DESERTER . . . .

"The record discloses the avarice and greed of a money-mad, inconsiderate wife, carried to the extent that they broke up her home and drove her husband from it."

The record thus includes much testimony and documentary evidence, introduced by appellant, relating to the acts, conduct and demeanor of the parties for a period of several years antedating the time respondent was alleged to have deserted appellant, which may be said to tend to develop a case of constructive desertion such as appellant has referred to in the above quotation. A portion of this evidence consists of certain letters and correspondence passing between the parties and antedating the time of the alleged desertion several years, at least as far back as 1926. However, appellant urges that the court erred in admitting in evidence Respondent's Exhibits B, C, and J, correspondence passing between the parties in 1929, urging that the record shows that the parties lived together as husband and wife up to May, 1931, and all previous matter is thus wholly irrelevant and immaterial. Such argument appears to be without weight inasmuch as the letters objected to tended to disprove, and were admissible for the purpose

of disproving, constructive desertion, the theory adopted and presented by appellant. It appears from appellant's own testimony that in 1929 appellant had left respondent. Exhibits B, C, and J, refer to the foregoing incident and contain evidence of the fact that difficulties existed between the parties and tend to disprove constructive desertion or that appellant was driven out by respondent's conduct. All of respondent's letters, although bitter in some instances, express great affection for appellant and contain many expressions of a sincere hope for a reconciliation.

 Appellant vigorously urges that the court erred in admitting Respondent's Exhibit "D" in evidence, urging that it is self-serving, may have been manufactured evidence, and it was not shown it was delivered to appellant. The circumstances which are shown by the record clearly indicate that the court committed no prejudicial error in receiving exhibit "D" in evidence and it is also clear that the court was fully aware that the exhibit could have been written as an afterthought and as self-serving, the court stating upon its reception in evidence that: "I think the circumstances are such that it should be admitted and these matters considered as to its weight." Exhibit "D" was stated by respondent to be a carbon copy of her answer to the letter written by appellant and left on the table for respondent in their home in Redmond, Oregon, and with relation thereto the record discloses as follows: Appellant had in the first instance written a letter to respondent, leaving it on the table in their Redmond home, expecting respondent would return and receive it. Appellant chose the method or means of communication between himself and respondent. Appellant's letter was received by respondent from the table. Respondent's testimony is that she answered this communication in the manner first chosen by appellant, by leaving her letter, together with appellant's letter, upon the table for receipt by appellant. While appellant testified that he had not received respondent's letter, there is evidence, without conflict, that only appellant and respondent had access to the house in Redmond, and, that upon respondent's return, some time after leaving the letters on the table, both were gone. It thus appears there was a conflict in the evidence

as to whether or not appellant had received the letter. The matter contained in exhibit ''D'' is so in consonance with other facts and circumstances made to appear, and the circumstances with relation to the method of communication chosen are such that it cannot be said that the trial court committed prejudicial error in admitting or considering exhibit ''D.'' It may be said in passing that a reading of exhibit ''D'' places no new light upon the evidence, but that it does further corroborate the testimony that respondent did not desert appellant. From an examination of the entire record the most that can be said is that there was a conflict in the evidence upon the question of desertion and there was ample substantial competent evidence to support the findings, conclusion and judgment of the trial court.

Several of the remaining assignments of error refer to the court's finding of fact number III that no agreement or contract was ever entered into, made or consummated by and between appellant and respondent relating to a settlement of their respective rights in and to their property. The conclusion reached by the trial court obviated the necessity of making any decision on the property rights and property settlement and required that no finding be made with reference thereto and this finding of fact number III should be and is eliminated and held for naught.

Other assignments of error have been examined and we are unable to find prejudicial error was committed in any of the respects referred to.

With finding of fact number III eliminated the judgment is affirmed. Costs awarded to respondent.

Ailshie, C. J., and Givens, Morgan and Holden, JJ., concur.

Petition for rehearing denied.